AO 91 (Rev. 11/11) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Northern District of New York

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| v. | ) Case No.  5:23-MJ-80 (ML |
| LUIS GUAJACA, | ) |
| Defendant. | ) |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief. On or about the date(s) of February 7, 2023, in the county of Jefferson in the Northern District of New York, the defendant violated:

| Code Section | Offense Description |
|---|---|
| 8 U.S.C. § 1324(a)(1)(A)(ii) | The defendant did transport and move or attempted to transport and move two aliens, knowing and in reckless disregard of the fact that the aliens had come to, entered, and remained in the United States in violation of the law, by means of transportation or otherwise, in furtherance of the aliens' violation of law. |

This criminal complaint is based on these facts:

☒    Continued on the attached sheet.

_____
Complainant's signature

Gerard A. Spinner, Supervisory Border Patrol Agent
Printed name and title

Attested to be the affiant in accordance with Rule 4.1 of the Federal Rules of Criminal Procedure.

Date: February 8, 2023

City and State:   Binghamton, NY

_____
Hon. Miroslav Lovric, U.S. Magistrate Judge

*United States of America v. GUAJACA, Luis Enrique*

On February 6, 2023, Border Patrol Agent (BPA) Evan Drake received information that a suspected rental Sports Utility Vehicle (SUV), a Honda CRV bearing New Jersey license plate E66 NUZ was traveling southbound on New York State Route (SR) 11 from Hopkinton, New York.  SR 11 is a prevalent route used by migrant smugglers to transport individuals who cross the international border illegally further south into the United States. Migrant smugglers are known to use SUV rental vehicles.  Smugglers are oftentimes aware that their personally owned vehicles could be seized for forfeiture if they are apprehended smuggling migrants into the United States.  These rental vehicles provide smugglers with reliable newer vehicles with few operational defects that would lead to mechanical failure or to them being pulled over due to improper equipment.  Migrant smugglers also frequently use larger vehicles to transport multiple migrants in one trip.

Further information indicated that this rental SUV was observed earlier in the evening near Ellenburg, New York.  Ellenburg is a town within close proximity of the United States/Canada International Boundary and the origin of multiple migrant smuggling cases previously apprehended by the Wellesley Island Border Patrol Station's Targeted Enforcement Unit (WIB TEU), Burke Border Patrol Station, Massena Border Patrol Station, and the Ogdensburg Border Patrol Station.  Ellenburg is a prime location for migrants to cross the international boundary due to its remote and rural landscape, as well as being directly south of the large metropolitan city of Montreal, Canada.  Intelligence and prior apprehension data show that Mexican citizens will fly into Montreal, Canada, solely intending to enter the United States illegally.  Agents discovered the SUV had remained near the border area in Ellenburg for up to 3 hours before making its way southbound from Hopkinton, New York.  This amount of time spent near the remote border area late at night is common for migrant smugglers while they wait for the migrants to cross the International Boundary.  Migrants and their smugglers will attempt to use the cover of darkness to avoid detection and apprehension by the U.S Border Patrol.

At approximately 11:55 p.m., BPA Drake observed the SUV pass his location near Philadelphia, New York.  The license plate on the SUV matched the license plate of the vehicle that BPA Drake had been given information on.  BPA Drake pulled behind the SUV, and the driver slowed the vehicle to below the speed limit.  BPA Drake observed multiple individuals on board the SUV.  BPA Drake activated his emergency lights and sirens on I-81, southbound, near the Bradley Street exit.  BPA Drake approached the vehicle, identified himself as a United States Border Patrol Agent, and questioned the occupants as to their citizenship.  The driver, later identified as Luis GUAJACA (GUAJACA), was determined to be a citizen of Guatemala and presented a United States Employment Authorization Document (EAD).  The two passengers, later identified as David Isaac BRAVO-MEZA (BRAVO), and Gilberto PERALTA-RIVERA (PERALTA), were ascertained to be citizens and nationals of Mexico without any legal immigration documents to be in, reside, or work in the United States.  BPA Drake placed all subjects under arrest and arranged for transport to the Wellesley Island Border Patrol Station.

At the station, record checks revealed GUAJACA had a valid Employment Authorization Card (EAC) and had entered the United States legally at the Chicago International Airport on August 6, 2022. Record checks on PERALTA and BRAVO revealed they had no legal immigration documents to be in, reside or work in the United States.

GUAJACA was issued *Miranda* warnings and did not agree to speak with law enforcement.

PERALTA and BRAVO were both issued their Miranda warnings individually, in the Spanish language, and agreed to provide a statement to law enforcement.  PERALTA claimed he was going to pay $5,000 USD to GUAJACA to take him a few hours west and from there he would take a bus the rest of the way to Oregon.

*United States of America v. GUAJACA, Luis Enrique*

PERALTA stated that GUAJACA called the phone of BRAVO to tell him he was on the roadway and flashing his lights.  PERALTA stated they exited the wooded area and entered the SUV.  According to PERALTA, when they were being pulled over, GUAJACA told PERALTA and BRAVO not to be nervous.

BRAVO stated he was going to pay $2,000.00 to GUAJACA for transporting him to Chicago.  BRAVO stated his brother set him up with GUAJACA as someone who could help transport him from the border to Chicago.  BRAVO stated he knew the driver of the SUV as "Luis."  BRAVO stated he communicated with "Luis" through WhatsApp messenger and provided "Luis "with his GPS location after the crossed the U.S/Canada International Boundary.

Attested to by the affiant:

Gerard A. Spinner
Supervisory Border Patrol Agent

I, the Hon. Miroslav Lovric, United States Magistrate Judge, hereby acknowledge that, on February __8__, 2023, this affidavit was attested by the affiant by telephone on in accordance with Rule 4.1 of the Federal Rules of Criminal Procedure.

Hon. Miroslav Lovric
United States Magistrate Judge